757 F.2d 878
 37 Fair Empl.Prac.Cas. 523,
36 Empl. Prac. Dec. P 35,088
Carl L. JONES, Sr., Plaintiff-Appellant,
v.
CITY OF ALTON, ILLINOIS, a municipal corporation, and Civil
Service Commission of the City of Alton, Illinois,
Defendants-Appellees.
 No. 83-2395.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 30, 1984.
Decided March 12, 1985.
 
 Earle McCaskill, East St. Louis, Ill., for plaintiff-appellant.
 Theodore E. Diaz, Diaz & Diaz, Alton, Ill., for defendants-appellees.
 Before CUDAHY and COFFEY, Circuit Judges, and GRANT, Senior District Judge.*
 CUDAHY, Circuit Judge.
 
 
 1
 Plaintiff, Carl L. Jones, Sr., brought this action under 42 U.S.C. Sec. 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., alleging employment discrimination. Defendants, the City of Alton (the "City") and the Civil Service Commission of the City of Alton (the "Commission"), moved for dismissal. The district court entered an order dismissing the action on res judicata grounds.[1] Plaintiff appeals the order dismissing his action. We reverse.
 
 I.
 
 2
 On December 16, 1977, plaintiff, then a member of the Alton Police Department, while off duty, was observed by two security guards inside a department store in Alton, Illinois, as he placed a videotape cassette in his trousers. When the guards apprehended him in the store parking lot plaintiff admitted removing the tape from the store without paying for it, but claimed he did so inadvertantly. On December 29, 1977, the Alton Police Chief, one Rudy C. Sowders, Jr., filed a Complaint for Discharge of the plaintiff with defendant Civil Service Commission of the City of Alton. The Complaint alleged that plaintiff's conduct at the store violated Rules 300.02, 300.04 and 300.24 of the Rules and Regulations of the Alton Police Department[2] and Rules 13.1-1(a), (h), (l) and (m) of the Rules of the Civil Service Commission.[3]
 
 
 3
 The Commission held a hearing on the Complaint on the second and third of February, 1978. During the hearing, plaintiff, who is black, attempted to introduce through questions directed to Chief Sowders evidence tending to show that white police officers who had been involved in activities as bad as or worse than plaintiff's off-duty retail theft had not been recommended for discharge. For a reason not specified by the Commission, plaintiff was not allowed to present his evidence. He was allowed to make an offer of proof. At the conclusion of the hearing the Commission found that plaintiff had violated the Civil Service Rules as alleged and ordered him discharged effective December 27, 1977. The Civil Service order is a page and a half long. It makes no mention of the initial question or objection, the evidentiary ruling or the offer of proof. No transcript of the hearing is included in the record we have before us.
 
 
 4
 Plaintiff filed a complaint for administrative review in the Circuit Court of Madison County, Illinois, which affirmed the decision of the Commission. Jones v. Civil Service Commission, No. 78 MR 95 (July 18, 1978). In its opinion the circuit court stated that the court on administrative review must act as a reviewing court and not as a finder of fact, may consider only matters brought before the Commission at its hearing and, so long as the procedures required by law were followed by the Commission, is limited to deciding whether the Commission decision was against the manifest weight of the evidence. The court concluded that the required procedures had been followed, that the Commission's decision was not arbitrary or against the manifest weight of the evidence and that the discharge was proper. Buried in the middle of the opinion is a single paragraph which, in retrospect, appears to be an allusion to plaintiff's racial discrimination claim. In its entirety, the paragraph states:
 
 
 5
 Plaintiff contends that the Commission erred when it sustained an objection to a question propounded by plaintiff's attorney to Police Chief Sowders: "Now throughout your tenure as either an employee of the Alton Police Department or as Chief of Police, are you familiar with any Officers ever charged with any crimes?" (R. 164). In my opinion, this evidence was clearly irrelevant.
 
 
 6
 Circuit Court Opinion at 5, Supp.App. at 16.
 
 
 7
 Plaintiff then appealed to the Appellate Court of Illinois, Fifth District. In his brief on appeal, plaintiff primarily argued the race discrimination issue. Supp.App. at 22. According to the brief, he had filed a motion for reconsideration before the Circuit Court, arguing that the evidentiary ruling on the attempted comparison with other police officers was incorrect. Supp.App. at 28-29. The brief explains that the motion for reconsideration was denied in an opinion (not in the record) holding that plaintiff was too late in citing Commission rules that require fairness in employment decisions (the theory being that he should have raised this issue before the Commission), and that the evidence sought to be admitted was irrelevant in any case. In his brief, plaintiff argued that the Commission's fairness rules were constructively before it during its own hearing and, whether or not the rules were properly before the Commission, they could be judicially noticed on administrative review. He further argued that the attempted line of inquiry was highly relevant under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and McDonald v. Sante Fe Trail Transportation Co., 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).[4]
 
 
 8
 The Illinois Appellate Court affirmed the decision of the Circuit Court. Jones v. Civil Service Commission, 80 Ill.App.3d 74, 35 Ill.Dec. 422, 399 N.E.2d 256 (5th Dist.1979). The Appellate Court opinion clearly holds that there was sufficient evidence in the record supporting the finding of retail theft, and that retail theft was sufficient cause for discharge. 80 Ill.App.3d at 76, 35 Ill.Dec. at 424, 399 N.E.2d at 258. However, the opinion is not at all clear in its discussions of the discrimination issue. There are two separate passages in the opinion which touch on this question.
 
 
 9
 In the introductory passages, we learn that "[d]uring the hearing Jones attempted to establish that he, as a black police officer, was receiving disparate treatment." 80 Ill.App.3d at 75, 35 Ill.Dec. 423, 399 N.E.2d at 257. We also learn that after Chief Sowders' objection to the question about other officers' offenses was sustained on grounds of relevance and materiality, plaintiff made an offer of proof which indicated that one white police officer received a thirty-day suspension after being accused of stealing 15 gallons of gasoline, and that a white officer charged with removing police records was suspended for twenty days. Id. The appellate court noted that the circuit court found this proffered evidence to be "clearly irrelevant," and went on to state that "the first issue on appeal is whether the Civil Service Commission properly refused to admit the evidence to demonstrate discriminatory treatment in plaintiff's case." Id. In "deciding" this issue, however, the court noted only that
 
 
 10
 [p]laintiff, in his offer of proof, did not indicate that he was in a position to produce evidence establishing that white police officers received more lenient treatment in the face of established guilt. Rather, plaintiff offered an unsubstantiated conclusion that criminal conduct on the part of white police officers resulted in the imposition of apparently minimal disciplinary sanctions.
 
 
 11
 Id. at 75, 35 Ill.Dec. at 423-24, 399 N.E.2d at 257-58. "Moreover," the court continued, "... the actions of the department head are not binding upon it and the Commission may reach its own decision on the merits of the case." Id. at 75, 35 Ill.Dec. at 424, 399 N.E.2d at 258.
 
 
 12
 The court then proceeded to the sufficiency of the evidence question.[5] We are not informed what Illinois law requires by way of an offer of proof in a hearing before an administrative agency for a party to be able to overcome a relevancy objection. It is at least clear that Jones made his race discrimination claim known to the Civil Service Commission. Standing alone, the holding on the offer of proof might be enough to establish that plaintiff could have raised his discrimination claim if he had made a proper offer of proof (and thus his subsequent suit would be barred by res judicata ). Certainly, if the Commission was independent of the department head, any evidence concerning a reason not to follow his recommendation--such as that his recommendations were racially motivated--would be highly relevant to the Commission's inquiry. Thus, if the evidence was excluded as irrelevant it must be because the offer of proof was drastically insufficient. The important point, however, is that the plaintiff would have been accorded an opportunity to litigate the issue of race discrimination, and under principles of claim preclusion, he would be barred from bringing the present suit (alternatively, if he did litigate the issue but lost, he would be barred by issue preclusion).
 
 
 13
 However, the remainder of the appellate court's opinion casts doubt on its willingness to entertain the discrimination claim whether or not it was properly raised. The court stated that "[s]ufficient cause for plaintiff's discharge exists regardless of whether other officers had received different treatment." 80 Ill.App.3d at 76, 35 Ill.Dec. at 424, 399 N.E.2d at 258. Under federal law, of course, this is not the end of the inquiry. Further, in other cases the Illinois appellate courts have considered defenses of racially discriminatory selective enforcement of employment regulations in determining whether there was "cause" for discharge. See, e.g., Fox v. Civil Service Commission, 66 Ill.App.3d 381, 23 Ill.Dec. 174, 383 N.E.2d 1201 (1st Dist.1978). The court went on to hold that McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), on which plaintiff relied to support his argument that the proffered evidence was relevant and admissible, being "brought under Title VII of the Civil Rights Act of 1964 ... are distinguishable from and inapplicable to the instant situation." 80 Ill.App.3d at 76, 35 Ill.Dec. at 424, 399 N.E.2d at 258. This could only be true if racially discriminatory treatment were not a defense to the charge and could not be considered by the Commission or reviewing court in its determination of whether there was cause for discharge. And that, of course, is not the law of this country.
 
 
 14
 We will return to this unsatisfactory expression by the appellate court of the basis of its decision in our discussion of Illinois preclusion law.
 
 
 15
 Plaintiff's petition for leave to appeal to the Illinois Supreme Court was denied May 29, 1980. In the meantime Jones attempted to pursue a federal remedy. In April, 1978, he filed a charge with the Equal Employment Opportunity Commission (the "EEOC"). He received a right-to-sue letter from the EEOC in January, 1981, and filed a civil rights action in the district court in April of that year. That action was dismissed for failure to join the Commission, an indispensable party. Plaintiff then commenced the present action.[6] The four-count Second Amended Complaint alleges that defendants committed an unlawful employment practice by recommending and causing plaintiff's discharge from employment for an alleged act of shoplifting while off duty by treating plaintiff in a manner disparate from that in which white officers were treated, and by preventing plaintiff from presenting evidence of alleged discrimination by disparate treatment at the hearing before the Commission. The second, third and fourth counts also allege denial of a fair hearing and damages from that and from racial discrimination. Defendants moved to dismiss the complaint, their motion was granted and plaintiff's action was dismissed as barred by "the doctrines of collateral estoppel and res judicata." Order at 3, App. at 93. Plaintiff appealed the dismissal.
 
 II.
 
 16
 It is settled law that a state court judgment must be given the same res judicata effect in federal court that it would be given in the courts of the rendering state. Migra v. Warren City School District Board of Education, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); Mandarino v. Pollard, 718 F.2d 845, 848 (7th Cir.1983), cert. denied, --- U.S. ----, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984); 28 U.S.C. Sec. 1738. Cf. Marrese v. American Academy of Orthopaedic Surgeons, 726 F.2d 1150, 1154 (7th Cir.) (en banc ) (section 1738 ought not prevent federal courts from giving greater res judicata effect to state court judgments than would courts of the rendering state), rev'd. --- U.S. ----, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). This rule applies to Sec. 1983 actions with respect to issues actually litigated (issue preclusion), Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and also issues which could have been but were not litigated in the state court proceedings (claim preclusion), Lee v. City of Peoria, 685 F.2d 196, 198-99 (7th Cir.1982). Migra v. Warren City School District Board of Education, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). The same rules apply to Title VII actions. See Kremer v. Chemical Construction Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (issue preclusion); id. at 481-82 n. 22, 102 S.Ct. at 1897 n. 22 (claim preclusion would apply as well); Unger v. Consolidated Foods Corp., 693 F.2d 703 (7th Cir.1982) (issue preclusion), cert. denied, 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 and --- U.S. ----, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983); Lee v. City of Peoria, 685 F.2d at 198-99 (claim preclusion). See also Migra, 104 S.Ct. at 896.
 
 
 17
 One general limitation is that the concepts of claim and issue preclusion (res judicata in the broad sense) cannot apply when the party against whom the earlier judgment is asserted did not have a full and fair opportunity to litigate the issue in the earlier case. Haring v. Prosise, 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983); Kremer, 456 U.S. at 480-81, 102 S.Ct. at 1896-97; Allen, 449 U.S. at 95, 101 S.Ct. at 415. When the prior determination is by a state court, and so the federal court is bound by 28 U.S.C. Sec. 1738, whether the first adjudication offered a full and fair opportunity to litigate the issue is determined by the Due Process Clause of the Fourteenth Amendment. Kremer, 456 U.S. at 481, 102 S.Ct. at 1897. So long as the state proceedings satisfy the minimum procedural requirements of the Due Process Clause, the state judgment is entitled to full faith and credit in the federal courts, and will be given the same preclusive effect by the federal courts that it would be given by the courts of the rendering state. Kremer, 456 U.S. at 481-82, 102 S.Ct. at 1897. But see Haring, 462 U.S. at 313, 103 S.Ct. at 2373 (additional exceptions to application of collateral estoppel rules may be warranted in Sec. 1983 actions because of federal policy underlying Sec. 1983).
 
 
 18
 Thus plaintiff here is barred from relitigating his claim of employment discrimination in federal court unless either (1) the state proceedings failed to satisfy the minimum procedural requirements of the Due Process Clause, or (2) he would not be barred under the state rules of claim and issue preclusion from relitigating the matter in the state courts. Preferring to avoid constitutional issues if possible, we turn first to a consideration of the preclusive effects of the state proceedings under Illinois law.
 
 III.
 
 19
 Illinois distinguishes between estoppel by judgment (res judicata in the narrow sense, i.e. claim preclusion) and estoppel by verdict (collateral or direct estoppel, i.e. issue preclusion). Redfern v. Sullivan, 111 Ill.App.3d 372, 375, 67 Ill.Dec. 166, 169, 444 N.E.2d 205, 208 (4th Dist.1983); Morris v. Union Oil Co., 96 Ill.App.3d 148, 153-54, 51 Ill.Dec. 770, 774, 421 N.E.2d 278, 282 (5th Dist.1981). See People v. Bone, 82 Ill.2d 282, 45 Ill.Dec. 93, 412 N.E.2d 444 (1980), cert. denied, 454 U.S. 839, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); Gay v. Open Kitchens, Inc., 100 Ill.App.3d 968, 56 Ill.Dec. 258, 427 N.E.2d 338 (1st Dist.1981). There is a difference between the effect of a judgment as a bar to the prosecution of a second action upon the same claim or demand and the effect of a judgment as an estoppel in another suit between the same parties on a different claim or cause of action. Bone, 82 Ill.2d at 286-87, 45 Ill.Dec. at 95, 412 N.E.2d at 446; Skolnick v. Petella, 376 Ill. 500, 503-04, 34 N.E.2d 825, 826-27 (1941). The former is res judicata (as we call it, claim preclusion), which "operates as an absolute bar to a subsequent action where a prior judgment rests on the merits, 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " Bone, 82 Ill.2d at 287, 45 Ill.Dec. at 95, 412 N.E.2d at 446 (quoting Cromwell v. County of Sac, 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195 (1877)). See Skolnick, 376 Ill. at 504-05, 34 N.E.2d at 827; Redfern, 111 Ill.App.3d at 375, 67 Ill.Dec. at 169, 444 N.E.2d at 208; Morris, 96 Ill.App.3d at 154, 51 Ill.Dec. at 774, 421 N.E.2d at 282. The latter constitutes collateral estoppel or estoppel by verdict (i.e. issue preclusion in our terms), which "concludes only 'those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' " Bone, 82 Ill.2d at 287, 45 Ill.Dec. at 95, 412 N.E.2d at 446 (quoting Cromwell, 94 U.S. at 353). See Skolnick, 376 Ill. at 503, 34 N.E.2d at 826; Redfern, 111 Ill.App.3d at 375, 67 Ill.Dec. at 169, 444 N.E.2d at 208-09; Morris, 96 Ill.App.3d at 153, 51 Ill.Dec. at 774, 421 N.E.2d at 282.
 
 
 20
 We need not decide whether the principles of claim preclusion or those of issue preclusion apply here. Under either set of principles our result would be the same. The plaintiff here clearly tried to raise and litigate in the proceedings before the Commission the issue of disparate treatment on account of his race. If he succeeded in raising the issue, then he would be barred under claim preclusion, if the present action is the same claim, or under issue preclusion, if the present action is not the same claim, since the issue would have been litigated in the prior proceedings. If, on the other hand, he did not succeed, and could not have succeeded, in raising the issue, then he is not barred under either doctrine. Claim preclusion does not bar litigation of issues which could not have been litigated, and issue preclusion only bars relitigation of issues actually litigated.
 
 
 21
 In order to be barred by issue preclusion, or by claim preclusion where the issue was litigated, the prior decision must have been on the merits of the issue. Bone, 82 Ill.2d at 286-87, 45 Ill.Dec. at 95, 412 N.E.2d at 446; Morris, 96 Ill.App.3d at 153-54, 51 Ill.Dec. at 774, 421 N.E.2d at 282; Rotogravure Service, Inc. v. R.W. Borrowdale Co., 77 Ill.App.3d 518, 524, 32 Ill.Dec. 762, 767-68, 395 N.E.2d 1143, 1148-49 (1st Dist.1979). In addition, the party against whom the prior judgment is asserted must have had an effective opportunity to litigate the issue in the prior proceedings. Gay v. Open Kitchens, 100 Ill.App.3d at 971, 56 Ill.Dec. at 261, 427 N.E.2d at 341. For "while the purpose of the doctrine is to prevent a party from litigating the same issue twice, it should not be used to preclude a party from litigating the matter at all." Id. at 972, 56 Ill.Dec. at 262, 427 N.E.2d at 341-42. The party must have had a full and fair opportunity to litigate the issue, and it must not be an injustice to apply the doctrine. Fred Olson Motor Service v. Container Corp. of America, 81 Ill.App.3d 825, 37 Ill.Dec. 5, 401 N.E.2d 1098 (1st Dist.1980). See Franciscy v. Jordan, 43 Ill.App.2d 344, 354-58, 193 N.E.2d 219, 223-25 (1963). In this sense the doctrine is an equitable doctrine, and subject to equitable principles. Gay v. Open Kitchens, 100 Ill.App.3d at 971, 56 Ill.Dec. at 261, 427 N.E.2d at 341. It "should only be applied as fairness and justice require." Rotogravure Service, Inc. v. R.W. Borrowdale Co., 77 Ill.App.3d at 525-26, 32 Ill.Dec. at 767, 395 N.E.2d at 1149. Accord Fred Olson Motor Service, 81 Ill.App.3d 825, 37 Ill.Dec. 5, 401 N.E.2d 1098.
 
 
 22
 The party asserting the preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment. Redfern, 111 Ill.App.3d at 377, 67 Ill.Dec. at 169, 444 N.E.2d at 209; O'Neill v. DeLaney, 92 Ill.App.3d 292, 47 Ill.Dec. 947, 415 N.E.2d 1260 (1st Dist.1980); Gale v. Transamerica Corp., 65 Ill.App.3d 553, 22 Ill.Dec. 92, 382 N.E.2d 412 (1st Dist.1978); Gonyo v. Gonyo, 9 Ill.App.3d 672, 292 N.E.2d 591 (2d Dist.1973). This is a "heavy burden of proof," Gale v. Transamerica Corp., 65 Ill.App.3d at 558, 22 Ill.Dec. at 96, 382 N.E.2d at 416; a court cannot "invoke the rule of estoppel by verdict or res judicata on pure speculation as to the finding of the trial court in the prior litigation." Lemanski v. Lemanski, 87 Ill.App.2d 405, 409, 231 N.E.2d 191, 194 (2d Dist.1967), appeal dismissed and cert. denied, 393 U.S. 20, 89 S.Ct. 52, 21 L.Ed.2d 21 (1968). To speculate on the grounds for the prior judgment would be to remove the burden placed on the proponent. Redfern, 111 Ill.App.3d at 377, 67 Ill.Dec. at 169, 444 N.E.2d at 209.
 
 
 23
 We now apply these principles of Illinois law to the facts of this case as we believe the courts of Illinois would. There is no doubt the plaintiff tried to litigate the issue in the Commission proceedings and state court review. At the Commission hearing he was told his proffered evidence was irrelevant and immaterial. On review, the circuit court found the evidence clearly irrelevant. It was only at the appellate court level that plaintiff's offer of proof was deemed inadequate. This offer of proof, that two white officers involved in alleged thefts had been only suspended, clearly cannot be said to have no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," People v. Free, 94 Ill.2d 378, 413, 69 Ill.Dec. 1, 16, 447 N.E.2d 218, 235, cert. denied, --- U.S. ----, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). Such a statement would have to be made in order to find that the proffer was so inadequate that the evidence could be ruled inadmissible as irrelevant. To state, as the Illinois Appellate Court seems to have, that the evidence regarding the white officers was inadequate because the plaintiff could not prove that they had been more lightly treated "in the face of established guilt" is to require that all relevant evidence be conclusive. Such an approach would deem all non-conclusive evidence irrelevant, even if it has some tendency to make some fact of consequence to the action more or less probable. That is not the law of relevancy in Illinois. People v. Free, 94 Ill.2d at 413, 69 Ill.Dec. at 16, 447 N.E.2d at 235 (evidence is relevant if it has "any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); People v. Monroe, 66 Ill.2d 317, 322, 5 Ill.Dec. 824, 826, 362 N.E.2d 295, 297 (1977) (same). Accord FED.R.EVID. 401. Finally, we note that the Illinois Appellate Court held that there was cause for discharge "regardless of whether other officers had received different treatment," and that McDonald and McDonnell Douglas, which hold that theft may be a legitimate basis for discharge but not for racial discrimination, were "inapplicable to the instant situation" because they were Title VII cases.
 
 
 24
 We conclude that defendants have not sustained their burden of showing with clarity and certainty that the issue was or could have been determined by the prior judgment. We believe that this burden was insurmountable, because we believe plaintiff was prevented from presenting his evidence on the mistaken theory that racial discrimination was irrelevant to his discharge. We cannot interpret the state court proceedings as being an instance where a litigant tried his issue and failed on the merits due to an inability to offer sufficient, or any, evidence. We also conclude that the Illinois courts have a policy not to apply claim or issue preclusion under circumstances where to do so would be inequitable or unjust--either because the party against whom the prior judgment is asserted did not have a fair opportunity to litigate the issue or because the basis of the prior court judgment is not clear and convincing. We therefore believe that the Illinois courts would not find the present action (or an analogous one based on p 2-102 of the Illinois Human Rights Act, ILL.REV.STAT. ch. 68, p 1-101 et seq. (1983)) to be barred by either claim or issue preclusion doctrine.
 
 
 25
 Appellees argue that this result is foreclosed by Kremer v. Chemical Construction Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), and by our recent decision in Unger v. Consolidated Foods Corp., 693 F.2d 703 (7th Cir.1982), cert. denied, 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 and --- U.S. ----, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983), both cases in which a state court judgment on review of an agency determination was held to preclude a federal civil rights suit. Neither Kremer nor Unger stands for the proposition that any state court decision reviewing an administrative action necessarily bars federal suit. In both Kremer and Unger the plaintiff (unlike Mr. Jones here) was proceeding on administrative review of a decision rendered by a local human rights agency which was charged with responsibility for the very subject matter the plaintiff wanted to raise in federal court, employment discrimination. Plaintiffs Kremer and Unger thus obtained agency determination of the issue of discrimination and the state court on administrative review addressed the adequacy of the agency's determination. Here, in contrast, Mr. Jones tried to raise the issue of employment discrimination but was prevented from doing so. Further, in both Kremer and Unger, the state court judgment would have been preclusive under state law if the plaintiff had tried to bring his or her federal claim in state court. Kremer, 456 U.S. at 467, 102 S.Ct. at 1890; Unger, 693 F.2d at 706. Here, however, the state court judgment is not preclusive under state law. Wakeen v. Hoffman House, Inc., 724 F.2d 1238 (7th Cir.1984), may be distinguished on the same grounds.
 
 
 26
 Somewhat surprisingly, neither party cites Lee v. City of Peoria, 685 F.2d 196 (7th Cir.1982). In that case a police officer was discharged when he falsely testified that he was home in bed on an occasion when he had in fact been involved in a dispute at the Police Commissioner's office. His Secs. 1981 and 1983 suit was dismissed as res judicata. The plaintiff made no attempt to raise his race discrimination charge before the administrative board, and the circuit court refused to take evidence on the issue when he attempted to raise it for the first time on review. We held that he could have raised the defense of racial discrimination, but did not do so. 685 F.2d at 200. Here, however, Mr. Jones tried to raise his defense, but the Commission and state courts would not consider it. Therefore, we do not think Lee forecloses the approach we take here.
 
 IV.
 
 27
 We do not mean to imply that retail theft is not a serious offense, or to suggest that a police department is compelled to retain those who commit such offenses. Perhaps the Alton Police Department should be firing more people, not fewer. It is the law, however, that whatever sanctions a police department considers appropriate must be applied in a nondiscriminatory fashion.
 
 
 28
 We have concluded that Jones's employment discrimination action would not be barred under Illinois rules of preclusion. Since we are required to give the same effect to the prior state proceeding in federal court as it would have in Illinois, we further conclude that Jones is not barred from bringing this action in federal court. Therefore we REVERSE the order of the district court, and REMAND the case for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 The terminology associated with doctrines of res judicata is various, and has not always been used consistently. We will adhere to the following terminology. Res judicata is divided into two types of preclusion: "issue preclusion" and "claim preclusion." "Claim preclusion" refers to the doctrine that bars litigation of claims and issues that were raised or could have been raised in a prior action between the same parties or their privies that has been resolved by final judgment by a court of competent jurisdiction. This is the law of merger (the extinguishment of a claim in a judgment for plaintiff) and bar (the extinguishment of a claim in a judgment for defendant). Claim preclusion is sometimes called "res judicata" when that term is used in its narrow sense. In Illinois it is known as "estoppel by judgment" or "res judicata" (in the narrow sense). Morris v. Union Oil Co., 96 Ill.App.3d 148, 153-54, 51 Ill.Dec. 770, 774, 421 N.E.2d 278, 282 (5th Dist.1981). "Issue preclusion" refers to the effect of a judgment in foreclosing relitigation of a matter of fact or law that has been litigated and decided in a prior proceeding involving at least one of the present parties, or its privy. The claim in which the issue is relitigated need not be the same. This is sometimes known as "direct estoppel" (if the subsequent claim is the same) or "collateral estoppel" (if the subsequent claim is not the same). In Illinois issue preclusion is also known as "estoppel by verdict." Morris, 96 Ill.App.3d at 154, 51 Ill.Dec. at 774, 421 N.E.2d at 282. Where the parties and claim are the same, direct estoppel may overlap with claim preclusion. For further discussion of terminology see Migra v. Warren City School District Board of Education, 465 U.S. 75, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984); RESTATEMENT (SECOND) OF JUDGMENTS, Introductory Note before ch. 3 (1982); 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION SEC. 4402 (1981); F. JAMES & G. HAZARD, CIVIL PROCEDURE Sec. 11.3 (2d ed. 1977)
 
 
 [2]
 Rules 300.02, 300.04 and 300.24 of the Alton Police Department are as follows:
 
 
 [300]
 00 PROFESSIONAL CONDUCT AND RESPONSIBILITIES
 
 
 [300]
 02 STANDARD OF CONDUCT
 Members and employees shall conduct their private and professional lives in such a manner as to avoid bringing the Department into disrepute.
 
 
 [300]
 04 CONDUCT UNBECOMING AN OFFICER
 A police officer is the most conspicuous representative of government, and to the majority of the people he is a symbol of stability and authority upon whom they can rely. An officer's conduct is closely scrutinized, and when his actions are found to be excessive, unwarranted, or unjustified, they are criticized far more severely than comparable conduct of persons in other walks of life. Since the conduct of an officer, on or off duty, may reflect directly upon the Department, an officer must at all times conduct himself in a manner which does not bring discredit to himself, the Department, or the City.
 
 
 [300]
 24 OBEDIENCE TO LAWS AND REGULATIONS
 Members and employees shall observe and obey all laws and ordinances, and all General or Special Orders of the Department or division thereof.
 
 
 [3]
 Rules 13.1-1(a), (h), (l) and (m) of the Alton Civil Service Commission are as follows:
 
 
 [13]
 1 Cause for Suspension, Demotion, or Discharge
 
 
 [13]
 1-1 The following are individually sufficient cause for filing charges which could lead to suspension, demotion, or discharge of any officer or employee from the Classified Service of the City, if proven, though charges may properly be based upon other causes and complaints[. The officer or employee]:
 a. has committed an immoral or criminal act;
 h. has been guilty of, or suspected of, insubordination or disgraceful conduct either while on duty or off duty;
 l. has violated any lawful official regulation, particularly any lawful and reasonable regulation made or given by his superior officer, or officers, where such violation or failure to obey amounted to an act of insubordination, a serious breach of proper discipline, or resulted (or might reasonable [sic] have resulted) in loss or injury to the City, to prisoners, or wards of the City, other City employees, himself, or to the public;
 m. is belived [sic] to be guilty of acts or omissions unbecoming an incumbent of the particular office or position held, which render his suspension, demotion or discharge necessary or desirable for the economical or efficient conduct of the business of the City or for the best interest of the City government.
 
 
 [4]
 In McDonald, the Supreme Court held that while theft may warrant discharging an employee, this criterion must be applied alike to members of all races. Title VII "prohibits all racial discrimination in employment, without exception for any group of particular employees, and while crime or other misconduct may be a legitimate basis for discharge, it is hardly one for racial discrimination." McDonald, 427 U.S. at 283, 96 S.Ct. at 2580
 
 
 [5]
 Before doing so, however, it remarked that the "issues before the Commission and before the court on review are, first, whether the evidence supports a finding that the person charged with the offense did in fact commit the offense and, second, if the person did commit the offense, does that fact constitute sufficient cause for discharge." 80 Ill.App.3d at 75, 35 Ill.Dec. at 424, 399 N.E.2d at 258. This would seem to indicate the adequacy of the offer of proof was not an issue on appeal. However, in framing these issues the court cited Fox v. Civil Service Commission, 66 Ill.App.3d 381, 23 Ill.Dec. 174, 383 N.E.2d 1201 (1st Dist.1978), where allegations of racial discrimination were held relevant to a determination of "cause" for discharge
 
 
 [6]
 The complaint with which this action is commenced is the first item in our record. We have no idea what happened between the dismissal of the first action in October, 1981, and the filing of the new complaint--which is not captioned a reinstatement--in January, 1982. Thus we cannot tell if the filing of the complaint commencing the second action relates back to the time of the filing of the first complaint for statute of limitations purposes. See FED.R.CIV.P. 15(c). In light of its conclusion on the preclusion issue, the district court did not reach defendants' contentions that the Sec. 1983 claim was barred by the applicable statute of limitations. This issue is not before us on appeal, and we express no opinion on it